[Civil No. 3089. Filed February 8, 1932.]

[7 Pac. (2d) 620.]

CONTINENTAL ILLINOIS BANK AND TRUST COMPANY, Appellant, v. JAMES B. BUTTON, Superintendent of Banks of the State of Arizona, and *Ex-Officio* Receiver of the YUMA VALLEY BANK, an Arizona Corporation, Insolvent, Appellee.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Mr. R. N. Campbell and Mr. H. F. Colman, for Appellee.

McALISTER, C. J.—In this action the Continental Illinois Bank and Trust Company sought to have a claim filed by it with James B. Button, receiver of the Yuma Valley Bank, for the amount of a draft issued to it by the latter given a preferred status. The trial court denied this relief but allowed the claim as a general one and the plaintiff appeals.

It appears that on June 10, 1930, the Continental Illinois Bank and Trust Company forwarded to the Yuma Valley Bank for collection a draft for $4,158 on Arizona Minerals Corporation, Yuma, Arizona, and on the following day one for $19.08 on the E. F. Sanguinetti Wellton Store. The first of these was collected by the Yuma Valley Bank on June 13, 1930, by the check of the drawee of the draft on the Security Trust and Savings Bank of that city, which was paid to the collecting bank when presented, and the second on June 16, 1930, by check of the drawee on the Farmers' Commercial Bank, which was also paid. The draft of the Yuma Valley Bank in settlement of the proceeds of these two checks, $4,177.08, on the Citizens' National Trust and Savings Bank of Los Angeles, California, was drawn and forwarded to the appellant on June 16, 1930, and in the regular course of business was sent by it to the drawee for payment but when presented there on June 23, 1930, it was not paid because the drawer, the Yuma Valley Bank, had three days before closed its doors and gone

into the hands of the Superintendent of Banks as Receiver. Its account with the Citizens' National Trust and Savings Bank had been overdrawn for several months at that time but it had each day between June 15 and June 20, 1930, cash in excess of $4,177.08. Accompanying each of the drafts forwarded by appellant for collection was a letter instructing it to collect the drafts and return in Chicago exchange.

Following the refusal of the Citizens' National Trust and Savings Bank to honor the draft of the Yuma Valley Bank appellant filed with the Superintendent of Banks its claim for the amount of the two drafts it forwarded for collection and requested that it be given a preference. The trial court, to which the matter was taken for determination, denied this relief but allowed the claim as a general one, and it is the correctness of this ruling that appellant asks to have reviewed.

The three errors assigned grow out of the contention that forwarding the drafts for collection created between the forwarder and the collecting bank the relationship of principal and agent and that, due to the instructions contained in the accompanying letter of transmittal, this relationship continued throughout the transaction. We have just held that when paper is forwarded for collection and remittance with the understanding that the draft or check of the collecting bank will be forwarded in settlement of the proceeds of the collection (*Security Trust & Savings Bank* v. *Button, ante,* p. 406, 7 Pac. (2d) 245), or for collection and remittance without any specific instruction as to the manner in which the remittance shall be made (*Murray Co.* v. *Button, ante,* p. 461, 7 Pac. (2d) 619), the relation of debtor and creditor between the collector and the forwarder comes into being upon the collection of

the paper, whether it existed before or not, and continues from then on, because the understanding between the parties to such transactions is that the collecting bank will mingle the proceeds of the collection with its own funds and substitute for them its obligation in the form of a draft or cashier's check and necessarily they, the identical funds collected, shall not be forwarded or even specially set apart for the sender.

It is contended in this case, however, that since the forwarding bank instructed the collecting bank to remit by Chicago exchange and it remitted instead by Los Angeles exchange it failed to comply with the terms of the special agency under which it accepted the collection and that this had the effect of impressing upon the proceeds of the drafts in possession of the bank a trust in favor of appellant, a status that remained with them as they passed into the hands of the receiver   It occurs to us, however, that inasmuch as the direction was to remit by exchange the mere fact that it used Los Angeles instead of Chicago exchange was not a material departure from the instructions since the direction to use exchange at all was in effect saying to the collecting bank: "Do not send the identical funds you collect but forward in their stead Chicago exchange; that is, send your own obligation in the form of a draft on your Chicago correspondent." Evidently appellant proceeded upon the theory that the Yuma Valley Bank would remit in this way or if it had no correspondent in Chicago that it would forward its draft on some other bank, but whatever it may have intended as to the manner of remittance it is clear that it authorized the Yuma Valley Bank to forward the proceeds of the collection by its own draft, and whether such draft was drawn on a Chicago or a Los Angeles bank it took the place of the actual money

collected and under the great weight of authority this gave the collecting bank the right to mingle such money with its own funds. Title to it passed and the collecting bank thereupon became the debtor of appellant. The relationship of principal and agent ceased and that of debtor and creditor arose in its stead and nothing the collecting bank could have done thereafter, even though it constituted a violation of instructions, would have placed them again upon a trust basis. Had it been the purpose of appellant to avoid this situation it could have done so either by requesting its agent to send the identical money collected or set it apart in a special fund, but when, instead of doing either, it directed that remittance be made by Chicago exchange it must be held that it intended that the collecting bank might mingle the funds and substitute its own obligation therefor.

This fundamental proposition is decisive of the case, and in view of it the suggestion of appellant that it might have received the proceeds of one of the drafts if the collecting bank had forwarded them more promptly or purchased a draft elsewhere and sent it instead of its own is immaterial.

The judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.